Good morning, Your Honors. I've returned, but not by bicycle. Well, it seems this is our second non-illuminated headlight on a bicycle leading to a strip search case in one week. Yes, both women, but this one is the City of Riverside and the County of Riverside. On the strip search, Florida v. J.L. really, plaintiff would submit, is the case. There, the anonymous informant tells the officers, age, youth, ethnicity, black, sex, male, clothing, plaid shirt. He's got a gun. Officers go there, do a pat-down search. Court holds unanimously, the anonymous informant does not justify the pat-down search. Here, we have person on a bicycle. That's given Officer Johnson the benefit of the doubt, which under the standard of review, he really does not deserve. But person on a bicycle would arrive. Let's argue this under the correct standard, otherwise we get confused. Okay. All right. You view the facts in the light most favorable to the non-moving party. That's you, right? To my client. Okay. My point is that even if he was told it was just a person on a bicycle, it would not justify the strip search. In fact, the reasonable inference here is that he was told more, right? He tells the, excuse me, the informant tells the dispatcher, male on a bike. A few seconds later, the informant, we know, is talking to the officer. The reasonable inference is that the informant would have told the officer what he had just told the dispatcher a few seconds earlier. And what's more, if for some reason the informant didn't volunteer it, you would have expected the officer to have asked, what does this person look like? But even under Johnson's version of the facts, this would be an unjustified strip search. Excuse me. If we held under Virginia v. Moore that there was probable cause for the detention and arrest, what is the evidence that Officer Johanson caused the strip search? What's the connection under our 1983 jurisprudence? He goes to the County of Riverside, the booking jail, executes the strip search request and authorization form, page 179 of the excerpt of record, and requests that she be strip searched based upon the information that he had in his report. He is obviously a proximate cause of the strip search. He never makes a request. The County of Riverside never has the information. There's no strip search. He wants the strip search to occur. He can't do it because, number one, he's a male and, of course, my client is a female, and number two, he's actually, excuse me, she's actually being booked into the Riverside County Jail. He works for the City of Riverside. So clearly, he proximately causes the strip search. And if an officer sets something in motion, which he can reasonably foresee, is going to result in the complaint of act, the officer is liable. Lorez versus City of Los Angeles. Under the county policy, is there a decision has to be made by a supervisor as to the strip search? Yes. In fact, a decision was made by Sergeant Oliver for the County of Riverside. He approved the strip search based upon the information that the Officer Johnson provided. And so what we have here are two defendants who are liable for the strip search, both the city and the county. Why is the county liable? If their policies are constitutionally appropriate, and let's just assume for the sake of argument that they're given bad information by the arresting officer, but they have no way of knowing that that's bad information, how are they on the hook? I mean, if everything that they were told was true, they don't have to go out and independently investigate, at least on unqualified immunity, if not just even on a less stringent standard. How are they acting unreasonably? If I can just back up and address your assumption that they were given bad information. The information the county has is no different than the information Officer Johnson has, which he recites practically verbatim in the county strip search authorization form, what he also recorded in his report, which is, again, the information about the anonymous caller. From the face of that statement by Officer Johnson, any reasonable officer should know that's not justification for the strip search, right? So everything that Johnson tells the people at the jail, assuming it's all true, and they have a right to assume that, isn't enough to justify a strip search? Correct. Right. Now, I realize with the county, we just go with the person on a bike, right? We don't get into this thing about the caller would actually describe a male. That applies to the city, Riverside, Johnson, but not as to the county. The information on that strip search authorization form provided by Johnson, which the county can accept is true, obviously, is not on its face justification for the strip search. And that's because it's based on an anonymous tip, which is inherently unreliable? An anonymous tip with no indicia of reliability as to information that's not reasonably ascertainable. Basically, the holding of Florida v. JL is not reliable. Correct. Now, the nub of the county's argument, as well as the city, is that this information, at least as reported by Johnson, both in his report and in the strip search authorization form, the nub of their argument is that is reasonable suspicion. Because the final statement, okay, so he says she was stopped for 2120 D.V.C. Is that the headlight? No headlight. And we're not contesting that here. That is that we're not claiming that her headlight was actually on. Right, right. Let me just, so we have two bases to support the county's claim of reasonable suspicion. We have the anonymous tip, and we have the fact that Smith was found in the area violating the headlight law. And those two things result in Officer Johanson's statement, I believe she may have drugs secreted in her purse. And what you're saying is those two things are not reasonable suspicion in that statement. Correct. And it's all there, and the county official who approved this could have, also couldn't have had reasonable suspicion under the policy. Correct. Because the policy, I mean, I know you made this argument, but the policy seems to me to be fairly sound, I mean, constitutionally sound. It goes through all the steps. It's just in its application it seems to have gone a little haywire. And that's the key here. I mean, you can have, and I use the case of Tennessee v. Garner, and then a follow-up decision in the Sixth Circuit, Garner v. Memphis Police Department, cited in the papers. In Garner, the Supreme Court said, this state law authorizing the shooting of all fleeing felons is not unconstitutional on its face because you can shoot fleeing felons, at least under some circumstances. But in the particular application before Garner, the fleeing burglary suspect, the Supreme Court held this use of deadly force was unconstitutional. The case goes back to the Sixth Circuit. And the question was, was the shooting in accordance with the state law, did the city adopt the state law, and the mayor said, yeah, it did. And on that basis, the Sixth Circuit held that the city was liable, not that their policy was on its face unconstitutional, it's that it authorized the specific complaint of unconstitutional act. Well, all right. There's two parts of this. I mean, one is the supervisor at the jail who reviews Johansson's report and makes a conclusion that that's a sufficient basis to conduct a strip search. That's a question of law, correct? I would submit yes, definitely. Okay. All right. So let's assume for the sake of argument that you're right about that. Where's your Monell violation? I mean, it's an error in judgment on the part of the person at the jail. Okay. I'm sorry for not having provided the citation in the brief, and I'll submit a Rule 28, I think it's 28J letter. Hammer versus Gross, that's this Court's en banc decision. There it was a case of the policy said officers could use force to extract blood from an arrestee. They can use reasonable force. But it left to the discretion of the officer as to what would be reasonable. The jury found that the force was unreasonable, and the jury found the city liable. On the city's appeal, it argued we're not liable because our policy says only use reasonable force. This Court held that when you delegate to the officer the decision as to whether the force is reasonable on whether or not to use reasonable force under these circumstances, the city is liable. That parallels what we have here. The policy is quite explicit, and it was all the T's were crossed and the I's were dotted. You had to fill out a form. You had to get supervisor approval. The supervisor had to sign off on it. And the supervisor here, in accordance with that policy, said the strip search is authorized and therefore to conduct it. That makes the county liable. In their brief, the county argues, and I'm quoting from page 7, the county and the sheriff presented undisputed evidence that strip searches are not conducted, which would not be permitted by policies and procedures. And that's the point here. This strip search followed their policies and procedures. It's true. The sergeant made a wrong call, we say, as a matter of law, that he should have known was a wrong call. No, but if you're right, it didn't, the strip search didn't follow their policy because their policy has a reasonable suspicion definition which says that it must be based on specific and articulable facts that the inmate is concealing a weapon or contraband and the strip search may reveal it, which is the standard. And what your argument is is that what was on the intake sheet, which authorized the strip search, was not specific and articulable facts that the inmate is concealing a weapon or contraband. So that would mean that the policy wasn't filed because the wrong definition of reasonable suspicion was used by the supervisor. Now, the supervisor could be liable. And maybe this county would have to indemnify the supervisor that if he's misapplying this policy, it doesn't seem to me to rise the level of male liability. Well, again, I go back to the Hammer decision where, again, the policy there was officers shall only use reasonable force. And then they left to the discretion of the officer to determine whether the force was reasonable. This Court held that policy was sufficient to hold the city liable. And if you look at the other one, where there were there criteria, I think maybe that's the distinction. I mean, here it doesn't just say we leave it up to the supervisor to decide whether there's reasonable basis for a strip search. It then articulates, the policy then articulates what the constitutional standard is. I mean, the thing that I worry about, if you're right, every officer who makes an arrest based on poor judgment subjects his or her employer to manel liability, because you delegate to officers the discretion whether to arrest somebody or not. And that's not the law. So here, I mean, Hammer does not, the facts don't come to mind immediately, but I don't recall there being, it was too broad a delegation. I think that was the problem in that case. And here, of course there's a delegation. There has to be a delegation. Officers have to make individual decisions based on individualized facts. But the criteria that they're supposed to apply are completely consistent with the Constitution, aren't they? It's a question of somebody having made a bad judgment as to whether those criteria were met. Throughout this litigation, and I invite the court to question counsel for the county on this point, the county takes the position that this is reasonable suspicion. They've argued it to the court below. They've argued it to this court. Their position is their personnel follow their policy. The policy is constitutional. There is an admission by them that what happened here was according to policy, and if it happened again, they'd do it the same way, absent, obviously, a court decision that says it was wrong. Is that the policy of the county, or is it its litigation position in this case? Well, it has been their position throughout this litigation, and I would submit that when they come into court and they say, I mean, there really isn't much dispute over the facts. With respect to the county, there are no disputes over the facts. And the county's position is it was according to policy, and our policy is constitutional. End of story as far as they are concerned. Maybe what they're saying is that, yeah, maybe that the supervisor didn't exercise any independent judgment, just accepted what was given to him at face value. But you don't know that. I don't know if that's been the subject of any deposition testimony or anything. Sergeant Oliver, he's the county of Riverside personnel. I'll just finish my point. I see my time's up. He states in his declaration, it's at page 141, 142 of the excerpt of record, that, look, I looked at all of this. This was in accordance with our policy for a strip search. That's why, when he said he looked at this, I looked at the statement by Officer Johnson. Under our policy, that justifies a strip search. Therefore, I authorize a strip search. And, again, that has been their position throughout this case, that he, Sergeant Oliver, followed policy, and this was reasonable suspicion. I know I'm 36 seconds over my time. If I could just indulge a minute for rebuttal. Thank you. All right. Good morning, Your Honors. Kent Bullard on behalf of the city of Riverside defendants. With the court's indulgence, counsel for the county defendants and I will plan to split the argument evenly, and I'm going to go first and take roughly seven and a half minutes of the time or as close as I can to that. I represent Officer David Johanson, Chief Russell Leach, the Riverside Police Department and the city of Riverside. Our approach in this appeal has been to show that at each step in the process, Officer Johanson responded as any reasonable, prudent patrol officer would have to the situation that he encountered, and that plaintiff's argument that he should be held liable for damages fails at each step of the argument. I did not hear any argument this morning from plaintiffs really going to the legality of the initial stop, the legality of the arrest that ensued after the officer discovered the outstanding arrest warrant for the plaintiff. So I will largely submit on the briefs and on our supplemental citation of authorities on those points. I do want to quickly touch on a couple points. In the plaintiff's brief, they often use the phrase that the plaintiff was cited under the Riverside Municipal Code for letting her dog run loose in a park off its leash, and there's really no evidence one way or the other as to what exactly she did to get that original citation. The ordinance actually applies to more than just letting a dog loose in a park off a leash. It could be in the street. It could be in someone else's property. But the bottom line is we don't know. But what's more important about the earlier citation is not that citation itself, but that the arrest warrant issued for her failure to appear and ever take care of that citation. So that was a preexisting circumstance that Officer Johanson encountered. The plaintiff riding to the exact spot where the drug courier on a bicycle was supposed to ride up to was another situation that Officer Johanson encountered. How do you get around the ambiguity in the record as to whether the person on the bicycle was a person or a male? I realize that if it's a person, it's an easier case for you, but there's a factual issue, isn't there, as to whether it was a male? And if it was a male, then the plaintiff obviously isn't a male. So how do you deal with that? Well, we don't believe there's any reasonable factual dispute as to what Officer Johanson knew. The log does say that the caller said that a male on a bicycle would be riding up to that location, but there's no evidence in the record. There's only sheer speculation that Officer Johanson knew the information in the log. Well, actually, isn't it quite a reasonable inference to draw that if the dispatcher wrote down it was a male on a bicycle, that she also said the same thing? I mean, we don't just look at what is in the record. We look at all reasonable inferences that can be taken from what's in the record. Right. And I think Judge Fogel has sort of pointed to the thing that troubles me, too, is that factual discrepancy, which may have made summary judgment not warranted in this case. Well, the only evidence directly as to what Officer Johanson knew was his own declaration that said they put the call through to him and that he was told by a caller who did not identify himself that it was a person, that there would be a person riding up on the bicycle. But, you know, what the question is is, and also, what are the facts about when the dispatcher puts it through? Does the dispatcher stay in the line? I mean, when is the dispatcher writing down the things in the log? Well, the record doesn't reveal anything other than what we have before us in terms of, you know, we have the actual log, we have Officer Johanson's declaration, but there's nothing in the record that demonstrates how the log is actually prepared. So we don't have anything on that. But I would suggest that if we look at more of the surrounding facts, it renders that inference completely unreasonable that Officer Johanson for some reason would have said a person. When he, when Officer Johanson encounters her riding on a bicycle without a headlight, he has reason to stop and even arrest her under Supreme Court authority. At that point, he discovers the warrants, and then he has a duty to arrest her at that point. He then takes her to the county jail and drops her off to the jail personnel. And at that point, if under plaintiff's theory he's essentially lying to say that she matches the description, what is his motivation to make that lie? I mean, he actually stays, the record shows that he doesn't just drop her off, he actually stays there at the jail to wait and see what the results of the strip search were. Now, if he were being a completely malevolent actor as plaintiffs admit. I really don't think that's the question. The question is whether reasonable suspicion based on these facts existed so as to warrant a strip search. Well. Without his malevolence or not. Well, there's, I just submit that there's no other, there's no other rationale for plaintiff's theory that he would be intentionally changing this, what the information that the caller gave. Now, by the time he gets to the jail, he does have more than just the initial tip to go by. This isn't a case like Florida versus jail where we're talking about the initial stop. He actually stops her. Then he observes her nervousness. It's a high crime area. And she was, in fact, there was some corroboration of the tip.  I agree with all that. But if he's told, and that really I think goes more to the county's liability than the city's, if he's told that the person on the bike, it goes back to the question I asked before, if there's any evidence from which a trier fact can conclude that he was told that the person on the bike was a man, then all of that goes out the window, doesn't it? I mean, you could have all that other stuff. But she's not the person that he got the tip about. If there's any evidence to that effect, but we submit that there simply isn't any evidence to that effect and that the other circumstances show he wouldn't have lied like that. All we know that he knows, if, in fact, he was told he was a man, all that he knows are two things that are completely, all that he personally knows. Set aside unreliable informant. All he knows is, one, she was riding in a neighborhood that isn't a great neighborhood on a bike without her headlight illuminated. And, two, there was an outstanding arrest warrant. I don't know if they'd figured out by then, by the time he got to the county or not, that it was invalid. No, at that point it was just a facially valid arrest warrant. She was getting an arrest warrant for a violation, some violation related to leash law. Neither of those two facts leads to she had reasonable suspicion that she has drugs or weapons on her. And under our law, the Fourth Amendment absolutely prohibits a stiff search unless either one of those two things is present. Well, we additionally have she rode to the exact location on a bicycle. We have her nervous demeanor. We have the high drug crime area. And it's the totality of the circumstances. We don't take each factor individually. And I would submit, I'm running out of time, but I would submit that even if this court disagrees with Officer Johanson, with Sergeant Oliver, and with the District Judge Phillips, that that wasn't enough for reasonable suspicion that she might be concealing narcotics, at most it's a case where qualified immunity should apply. We're not arguing that the law is unclear. But as we point out in the Saussure v. Katz case, which cites the Anderson v. Creighton case, there's still room for officers to make reasonable, albeit mistaken, judgments in the field. And if this court disagrees with the two officers who were there in the field and with the trial court, we submit that there's still, that qualified immunity would still be appropriate here. I think I've exceeded my time and I'll have to submit on the briefs as to the other issues unless the court has questions. Thank you. Good morning. Good morning. As to the county and former Sheriff Doyle, this is a custom and policy case. That's all it is. Either one of them were involved in the decision. There's no individual being sued beyond that. It's county and former Sheriff Doyle. The individual deputies involved in the search are not defendants. So it's a custom and policy case, or there is no case. Just to be clear, Sergeant Oliver is not a defendant? Correct, never was named. So the question then comes down to, is there a policy which violates federal law? The written policy, I think, very clearly complies with federal law. If anything goes beyond that. There was a reference to a statement on page 7 of our brief. I wrote the brief. And going back through it again, it may be a little ambiguous, as certainly plaintiff's counsel is reading it to say an awful lot more than I ever intended. All I was pointing out, if you look at the citations following that, page 141 and 143 of the record, that's the declaration of Sergeant Oliver. And all he says on those pages is that page 141 talks about the policy requiring reasonable suspicion and the procedure requirements. Page 143, then, talks about, in practice, this is not a blanket strip search policy. He says that on an average evening, about ten females are brought in and one or less is strip searched. That's what I was referencing, pointing out that this is not a blanket search policy. It's a ten percent or less search policy in practice. So going back to the Manel question, the plaintiff has the burden to prove a policy of searching when there's no basis for doing so. The only evidence we have is this search. And there's legions of cases holding a single incident is not enough to show a policy which doesn't comply with the written policy. The plaintiff's burden, because the written policy is valid, the plaintiff's burden to this case was to prove that the actual policy, in practice, is different than the written policy. They haven't done that. And I think that enough ends the case. Our backup argument, and I emphasize in the trial court and here as well, it's only a backup argument, is there was no violation because the facts of this case show reasonable suspicion. The arguments back and forth about whether the city officer misled the county are irrelevant as to the county, because the county was told only the facts written on pages 87, 98, and 122 of the record. Those are basically the form and the two declarations talking about what was conveyed. There is zero evidence that the county was given any evidence to suggest that the identification was anything other than based on the information provided by the informant. The male versus female was never communicated to the county. Let's see. I think we have a number of cases that talk about tips from anonymous citizens, knowing nothing about them and how unreliable that is. Does that undercut the reasonable suspicion here? Two answers. Number one, as to the policy, it's not relevant. I agree with you on your policy. As to the question of whether this particular one, it's a factor in there, but you look at the information that was conveyed to the county and you have the tip of a person who is a drug courier on a bicycle, very shortly after that the drug courier on a bicycle shows up. But we don't know who this person is. It could be anybody. It could be someone with a grudge against the person trying to get them picked up by the police. I mean, there's so many things that could be out there that makes this unreliable. And those are factors that are weighed into the equation. The policy based on Ninth Circuit law requires reasonable suspicion, and I've read all of the Ninth Circuit and most other circuit cases about this one. And putting that into a concrete practice, it's pretty difficult. I think as far as the county and former Sheriff Doyle's position, you have to write a policy which complies with the law and specify what the standard is. And I think they've done as good a job as you can do. If, because they didn't sue the sergeant, if the sergeant didn't follow the policy by applying the correct standards, they don't have any, the county still doesn't have any liability. Correct. Okay, they would have had to sue the sergeant to get there. And they didn't. Okay. All right. Thank you. Thank you. You can have the minute that the defense counsel left. Even if the court finds the county is not liable under Section 1983, the county is liable under plaintiff's state law claim, 52.1 and Article I, Section 13. The discussion of the legal authorities is at pages 23 to 24 of the opening brief. Of course, in the state law claims, the county is liable under Respondent Superior, no requirement of a showing of a Monell basis. And there's no qualified immunity for the 52.1 claim. Don't you have to have sued the sergeant for that one as well? No, not under state law. And, again, the authorities, Perez v. City of Huntington Park is a case where the plaintiffs sued for battery, excessive force under state law. All the individual officers were exonerated, but the city was still held liable. You do not have to sue the individuals under state law. And, again, the authorities are at pages 23 to 24 of the opening brief. Did it with five seconds to spare. Thank you. Oh, okay. Forgive me for not knowing this, but was there a government tort claim filed with regard to the 52.1? With respect to the county, yes. Not with respect to the city, because we didn't know the city's involvement until long after the city was. If you're saying even if there's no Monell liability, there's a claim against the county under 52.1, which would be subject to the California Tort Claims Act, and you did comply with it. Correct. Okay. Yes, thank you. Okay. Smith v. County of Riverside is submitted. Dahan v. MGM Investigations has been vacated. And we will take up Sunset Drive Corporation v. City of Redlands.
judges: Wardlaw, Ikuta, Fogel